UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GE Transportation Parts, LLC,

                Plaintiff,

        –v–

Central Railway Manufacturing, LLC,

                Defendant.

19-CV-4826 (AJN)

MEMORANDUM
AND ORDER

---

ALISON J. NATHAN, District Judge:

    Plaintiff GE Transportation Parts, LLC, brings this action against its former subcontractor Defendant Central Railway Manufacturing, LLC, for breach of express warranty, breach of contract, and indemnification. Defendant has brought a motion to transfer this action under Section 1404 to the Middle District of Florida, dismiss this action on the basis of *forum non conveniens*, or, in the alternative, stay this case in favor an apparently yet-to-be-filed action in Florida. *See* Dkt. No. 21 [hereinafter the "Transfer Motion"]. It has additionally moved to dismiss the Complaint for failure to state a claim. *See* Dkt. No. 23 [hereinafter the "Motion to Dismiss"]. Plaintiff has also filed a motion to strike. *See* Dkt. No. 33. For the reasons articulated below, the Transfer Motion is denied, the Motion to Dismiss is granted in part and denied in part, and the motion to strike is denied as moot.

**I.    BACKGROUND**

    The following facts are drawn from the Complaint and assumed to be true for purposes of these motions.

    In a Supply Agreement dated November 16, 2015, Plaintiff's predecessor-in-interest and Defendant entered into an agreement to create a "data event recorder," which the parties refer to

1

as a "GEER" (General Electric Event Recorder).  Complaint, Dkt. No. 1, ¶ 1.  Plaintiff alleges that "[t]he principal purpose of a data event recorder is to store information about the functioning of an operating locomotive, including data that might prove helpful in the event of an accident." *Id.*  Furthermore, " the GEER is a component of GET's digital product line that, when bundled with GET's digital video recording product 'LocoVISION,' provides a railroad monitoring system with comprehensive data and video recording capability."  *Id.* ¶ 4.

However, Plaintiff alleges that there were problems with the GEERs, which it claims was a result of Defendant's failure to manufacture them according to Plaintiff's specifications.  *Id.* ¶ 5, 7, 13, 27, 37-39, 41, 45, 49.  Among these alleged deficiencies was an inability to seamlessly integrate the GEER with the broader LocoVISION platform.  *Id.* ¶¶ 51-52.  As a result of these issues, Plaintiff claims it incurred various costs with respect to a U.S. Customer and a Canadian Customer.  *Id.* ¶¶ 53-55, 64.

Furthermore, on October 6, 2017, Defendant gave notice that it was discontinuing manufacture of the GEER.  *Id.* ¶ 8.  Under the Supply Agreement, Plaintiff claims that this notice of discontinuance triggered a contractual obligation for Defendant to license to Plaintiff its GEER technology on commercially reasonable terms.  *Id.* ¶ 34.  But Plaintiff alleges that Defendant failed to do so, only offering a license "several multiples in excess of any reasonable valuation."  *Id.*  Plaintiff claims that as a result, it has suffered damages in the form of "(i) expenses related to development of GET's own event recorder technology from scratch; (ii) lost sales and service revenue due to GET not being able to sell a GE-branded event recorder to its customers until that new product development process is complete; and (iii) the U.S. Customer's return of previously-delivered GEERs."  *Id.* ¶ 10.

Because of these alleged breaches, Plaintiff claims that the U.S. Customer decided to terminate its contracts with Plaintiff.  *Id.* ¶¶ 47-49.  Plaintiff alleges that the U.S. Customer had

previously raised three issues about LocoVISION with Plaintiff, one of which was the GEER, but that the deficiencies with the GEER were the only ones that Plaintiff were unable to cure. *Id.* ¶¶ 41-42, 48-49.  Plaintiff and the U.S. Customer ultimately entered into a Settlement Agreement (or Termination Agreement) under which Plaintiff made a payment to the U.S. Customer. *Id.* ¶¶ 54-55.

Plaintiff now brings three claims.  First, it alleges that Defendant's failure to build the GEER pursuant to Plaintiff's specifications is an express breach of warranties contained in the Supply Agreement.  Second, it alleges that Defendant breached its contractual obligation in the Supply Agreement to license technology to Plaintiff on a commercially reasonable basis after Defendant discontinued the GEER.  Third, Plaintiff claims that Defendant breached its indemnity obligations in the Supply Agreement by failing to indemnify Plaintiff for its settlement payment to the U.S. Customer.

## II.   THE TRANSFER MOTION IS DENIED

Defendant moves to transfer this action under Section 1404 to the Middle District of Florida or dismiss this action on the basis of *forum non conveniens* in favor Florida.  In the alternative, Defendant moves that this case be stayed in favor of an apparently yet-to-be-filed action in Florida.  Plaintiff argues that a New York forum selection clause contained in an attachment to the Supply Agreement requires the parties to litigate this suit in New York since all of the claims here arise out of the Supply Agreement.[1]  Defendant's response is premised on the

---

[1] That clause provides that for "any controversy, dispute or difference arising out of this Order . . . :"

> If the Purchaser, or any of Its affiliates with connections to this Order, has offices in North America, legal action will exclusively be brought and resolved in the United States District Court for the Southern District or New York (where federal jurisdiction exists) or the Commercial Division of the Courts of the State of New York sitting in the County of New York (where federal jurisdiction does not exist), and the appellate courts having jurisdiction of appeals in such courts. Each party agrees that jurisdiction and venue in these New York courts is appropriate, and irrevocably submits with respect to any action or proceeding brought pursuant to this Section 3 for

argument that a Florida forum selection clause contained in the Settlement Agreement between Plaintiff and the U.S. Customer is applicable to this dispute. It then makes several arguments as to why that clause should take precedence over the New York clause.[2] Neither party disputes the basic principle that that on Section 1404 transfer motions, "forum-selection clauses should control except in unusual cases." *Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 64 (2013). The question is which forum selection clause governs here.[3]

Defendant argues that because there is a colorable argument that Plaintiff's claims against it are covered by the release in the Settlement Agreement, this action should be transferred to Florida. Even assuming that this is the correct standard, Defendant's argument is without merit. As Defendant recognizes, in order for its arguments to succeed, the parties to the settlement agreement must have intended for Defendant to have third-party beneficiary status under it. But the Settlement Agreement evinces no such intent. Regardless of whether Florida or New York

---

itself and in respect of its property, generally and unconditionally, to the personal jurisdiction of the courts of New York, and irrevocably waives any objection that it may now or hereafter have that any such court Is an Improper or Inconvenient forum for any proceeding brought pursuant to this Section 3.

Supply Agreement, Exh. B, § 3.1(B)(1).

[2] The relevant clause in the Settlement Agreement provides:

Each Party irrevocably submits to the exclusive jurisdiction of the courts of the State of Florida for the purpose of any suit, action, proceeding or Judgment relating to or arising out of this Agreement and the transactions contemplated hereby. Each Party also Irrevocably waives any objection to the laying of venue of any such suit, action or proceeding brought in such courts and Irrevocably waives any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum.

Settlement Agreement, § 9.7(b).

[3] Defendant broaches the possibility that the New York forum selection may not cover all claims in the Complaint. However, it only raises this issue in connection with its argument that if the Florida forum selection clause is applicable to this lawsuit, then it should control. Defendant argues that because the Florida clause is broader, it should take precedence over the New York clause. Defendant does not suggest that the some claims in the complaint should be severed from this action in the event that the Court finds that other claims must be kept in New York. Indeed, given the overlapping factual issues among all three claims, severing some of them would create inefficient, duplicative litigation.

law applies, the intent to create third-party beneficiary status under a contract cannot be expressed obliquely. Under Florida law, it is created only by "the clear or manifest intent of the contracting parties that the contract primarily and directly benefit the third party." *Mendez v. Hampton Court Nursing Ctr., LLC*, 203 So. 3d 146, 148 (Fla. 2016) (quotation omitted). And under New York law, "the language of the contract must clearly evidence an intent to permit enforcement by the third party." *Consol. Edison, Inc. v. Northeast Utils.*, 426 F.3d 524, 528 (2d Cir. 2005).

The release by Plaintiff in the settlement agreement is directed to "[the U.S. Customer] and Related Parties of [the U.S. Customer]." Settlement Agreement, § 7(b). The definitions section of the Settlement Agreement further states: "Related Parties with respect to a Party, means all current, former and future directors, officers, principals, partners, shareholders, members, representatives, agents, employees, managers, attorneys, administrators, Affiliates, subcontractors, successors and assigns." *Id.* § 1(v).

Defendant contends that it is a Related Party of the U.S. Customer because it is a former subcontractor of Plaintiff. However, this is a misreading of the plain text of § 1(v), which provides that "Related Parties," such as "subcontractors," are to be defined "with respect" to the party of the contract at issue. Later parts of the Settlement Agreement refer to "Related Parties of GE Transportation" and "Related Parties of [the U.S. Customer]." *See Id.* § 7(a), (b). They are thus not the same group. The Defendant, with at least respect to the GEER, is only a former subcontractor of Plaintiff, not of the U.S. Customer in the "three-party arrangement" it argues is pertinent for resolution of this motion. Therefore, it is not one of the "Related Parties of [the U.S. Customer]" under the Settlement Agreement. *See Id.* § 7(b). This conclusion does not, as Defendant argues, render the use of "subcontractor" in § 1(v) superfluous. For example, as noted

above, the Settlement Agreement also references "Related Parties of GE Transportation," a term which is likewise defined by reference to § 1(v). Defendant, as a former GEER subcontractor of Plaintiff, would appear to fit within the definition of a Related Party of Plaintiff. That Defendant is not a "Related Party" of the U.S. Customer does not render any language in the contract superfluous.

In its opening memorandum of law, Defendant also argues that because one part of the Plaintiff's release states that Plaintiff "agrees not to commence any proceedings or take any action to enforce or maintain the GE Transportation Claims," that the release in fact extends to any party. *Id.* § 7(b)(iii). This reading would ignore the rest of the sentence from which that quoted language comes, which clearly cabins the scope of the release to the "[U.S. Customer] and Related Parties of the [U.S. Customer]." *See id.* § 7(b)(i)-(iv). Defendant appears to concede as much in its reply, when it states that the release "furnishes broad protections for all of the Related Parties." Transfer Reply at 2.

Moreover, Defendant's argument is rendered absurd by language in the Settlement Agreement that explicitly contemplates further litigation by Plaintiff against Defendant. For example, § 7(e) states that "[n]otwithstanding anything to the contrary, [the U.S. Customer] has no right to rely on or otherwise use this Agreement to resist a subpoena from GE Transportation in relation to any current or future legal proceedings between GE Transportation and CRM." And § 9(c) provides that, GE Transportation may disclose this Agreement and the fact that the Settled Claims have been settled to its subcontractor, CRM, to the extent reasonably required to pursue or defend Claims arising from or relating in any way to any of the Settled Claims." This language is entirely inconsistent with Defendant's view that the Settlement Agreement intended to create a global peace among all parties involved.

There is no colorable argument that the Settlement Agreement expresses clear or manifest intent to make Defendant a third-party beneficiary under it.  Therefore, neither transfer, dismissal on *forum non conveniens* grounds, or a stay is warranted.  Defendant's motion is denied.

## III.   THE MOTION TO DISMISS IS GRANTED IN PART AND DENIED IN PART

### A.  Legal Standard

To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A plaintiff is not required to provide "detailed factual allegations" in the complaint but must assert "more than labels and conclusions." *Twombly*, 550 U.S. at 555.  Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* The Court must accept the allegations in the complaint as true and draw all reasonable inferences in the non-movant's favor. *ATSI Communs, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  In addition to the Complaint, the Court may "consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *Id.*

### B.  The Breach of Express Warranty Claim Is Dismissed

The lynchpin of Plaintiff's breach of express warranty claim is that Defendant failed to manufacture GEERS that met Plaintiff's technical specifications.  Compl. ¶¶ 71-73.  These technical specifications were contained in what was called the Interface Control Document ("ICD").  There were allegedly multiple iterations of the ICD, but the Complaint focuses on one version, dated December 21, 2017.  *See id.* ¶¶ 26-27.  The Complaint specifically alleges that the

GEER's technical specifications "are set forth in the ICD (a document that, in turn, is expressly incorporated into the Supply Agreement by virtue of CRM's express warranty obligations)." *Id.* ¶ 67. As to those express warranty obligations, the Complaint contains the following allegation: "CRM expressly warranted in the Supply Agreement that . . . [f]or 15 months post-installation, the GEERs would be free from defects in materials and workmanship and 'will conform to the specifications furnished or approved by [GET].'" *Id.* ¶ 69(c) (quoting Supply Agreement § 10.2).

Defendant, *inter alia*, argues that the ICD is not binding on it at least for purposes of the express warranty claim. It notes that the Supply Agreement contains an integration clause and also requires that any modification be "made in writing and signed by both parties." Supply Agreement § 1(b). And it observes that there is no such modification adding compliance with the ICD to the express warranties in the Supply Agreement. Moreover, Defendant contends that the reference to "specifications furnished or approved by [GET]" is insufficient to incorporate the ICD by reference under New York law. Thus, under Defendant's reasoning, the ICD cannot be binding for purposes of the express warranty claim. The Court agrees.

Under New York law, "the paper to be incorporated into a written instrument by reference must be so referred to and described in the instrument that the paper may be identified beyond all reasonable doubt." *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1201 (2d Cir. 1996) (quotation omitted). "[A] party will not be bound to the terms of any document unless it is clearly identified in the agreement." *Id.* This is "an exacting standard" and "vague references to documents not specifically identified do not suffice." *Ward v. TheLadders.com, Inc.*, 3 F. Supp. 3d 151, 163 (S.D.N.Y. 2014) (quotation omitted). For example, "a general reference" to a "Bank's 'rules' and 'regulations'" is insufficient to incorporate another document, because it

only "makes reference to a general class of extrinsic documents rather than to a specific document." Sea *Trade Co. v. FleetBoston Fin. Corp.*, No. 03-cv-10254, 2007 U.S. Dist. LEXIS 32167, *12-*14 (S.D.N.Y. Apr. 30, 2007). The bare reference in § 10.2 to Plaintiff's "specifications" is not sufficient to meet this standard and incorporate the ICD by reference. Something more was required.

Plaintiff does not argue that it can meet the New York common law standard on incorporation by reference but instead contends that this standard is overridden by the Uniform Commercial Code. "[A] contract for the sale of goods is governed by New York's version of the Uniform Commercial Code ("N.Y. U.C.C."), as interpreted in light of common law principles to the extent not inconsistent with the U.C.C." *Phoenix Ancient Art, S.A. v. Kimbell Art Found.*, 03-cv-1008, 2003 U.S. Dist. LEXIS 20560, at *5 (S.D.N.Y. Nov. 14, 2003). And the U.C.C. itself provides that, "[u]nless displaced by the particular provisions of this act, the principles of law and equity, including the law merchant . . . supplement its provisions." N.Y. U.C.C. Law § 1-103(b). As discussed below, none of the U.C.C. provisions cited by Plaintiff displace the common law rule.

Plaintiff argues that § 2-313 allows the warranty in the Supply Agreement to make the ICD binding without a more express reference to it. That section provides that "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and that "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." N.Y. U.C.C. Law § 2-313(1)(a)-(b). The comment, which Plaintiff also cites, states that "[a] description need not be by words. Technical specifications, blueprints and the like can afford

9

more exact description that mere language and if made part of the basis of the bargain goods must conform with them." *Id.*, Official Comment (5). But § 2-313 only addresses how to identify a warranty. It does not speak to whether that warranty incorporates another document by reference. There is no dispute that § 10.2 is an express warranty. The question here is what, if anything, does that warranty incorporate by reference, i.e. which "specifications," if any, are binding. Plaintiff itself seemed to recognize this distinction when it pled that the ICD is "*incorporated* into the Supply Agreement *by virtue* of CRM's express warranty obligations." Compl. ¶ 67 (emphasis added).

The cases cited by Plaintiff do not support its position. *Shop Vac Corp. v. BCL Magnetics Ltd.* involved a purchase order that required a product to be manufactured to "part print # 12637-11, Revision Code V." *Shop Vac Corp. v. BCL Magnetics Ltd.*, No. 04-cv-262, 2005 U.S. Dist. LEXIS 26199, at *9, *17 n.8 (N.D.N.Y. Oct. 24, 2005). The court treated this highly specific language as incorporating the part print by reference. *Id.* at *21. It did not articulate what standard it was applying to determine incorporation by reference. To the extent it addressed the question, it appeared to treat compliance with § 2-313 as distinct from whether the part print was incorporated by reference. *Id.* In the other case cited by Plaintiff, the parties did not dispute that the specifications at issue were binding and the court did not address any of the issues raised by this case. *See Conductores Monterrey, S.A. de C.V. v. Remee Prods. Corp.*, No. 95-cv-7925, 2000 U.S. Dist. LEXIS 14063, at *5 n.3, *23 (S.D.N.Y. Sept. 27, 2000). These cases do not stand for the proposition that § 2-313 of the U.C.C. displaces New York's common law requirements for incorporation by reference.

Plaintiff also argues the parties' course of dealing and performance somehow incorporated the ICD into the Supply Agreement under the U.C.C. But the Supply Agreement's

integration clause forecloses this argument by overriding the U.C.C. in this respect. In part, the integration clause provides that "no course of dealing, usage of trade, or course of performance shall be relevant to explain or modify any term expressed in the Agreement." Supply Agreement § 1(b). To the extent that Plaintiff contends that the parties' course of dealing made the ICD independently binding rather than binding because it was incorporated into the warranties of Supply Agreement, the Court will not address that argument because it is not the theory of liability that is pled in the Complaint. *See* Compl. ¶ 67.

Plaintiff's breach of express warranty claim is premised on the theory that the Supply Agreement's express warranties were breached when Defendant allegedly failed to comply with technical specifications contained in the ICD. But because the Supply Agreement did not make the ICD binding, this claim must fail. Accordingly, it is dismissed.

### C. Plaintiff Has Stated a Claim for Breach of Contract

Plaintiff's breach of contract claim is based on the allegation that Defendant "materially breached the Supply Agreement by failing to offer GET a commercially reasonable price for 'a license and the technology necessary to secure another supplier' following CRM's discontinuance of the GEER product." Compl. ¶ 79 (quoting Supply Agreement § 3(a)(b)(ii)). As an initial matter, the Court proceeds under the theory that the U.C.C. applies to that clause and, in the absence of a price term, supplies the requirement that Defendant offer a "good-faith and commercially reasonable proposal." *Id.* ¶ 10. In a footnote in the opening brief of its motion to dismiss, Defendants states that it "reserves its right to argue" that this part of the U.C.C. does not apply here, but does not believe that question is "material for purposes of this motion." MTD Opening Br. at 18 n.11. Therefore, it waived the argument that the U.C.C.'s obligation to offer a good-faith and commercial reasonable proposal does not apply here.

In support of its allegation that Defendant breached the agreement, Plaintiff alleges that "despite multiple meetings and negotiation sessions between CRM and GET business leaders, CRM never offered anything better than a license at a price several multiples in excess of any reasonable valuation of that license." Compl. ¶ 34.  It further alleges that "CRM's license proposals to GET were also based upon a discounted cash flow valuation analysis riddled with commercially unreasonable assumptions (some of which CRM knew to be false), in an attempt to 'justify' CRM's exorbitant asking price." *Id.*  While this is not an extensive recounting the negotiations and proposals between the parties, at the motion to dismiss stage, "detailed factual allegations" are not required. *Twombly*, 550 U.S. at 555.  These allegations are enough "to raise a right to relief above the speculative level" and state a plausible breach of contract claim. *Id.*

Defendant argues that this claim should be dismissed based on documents it has attached to its motion.  It claims that these documents show that the parties' negotiating proposals were not far apart, that Plaintiff could have avoided some of its losses by accepting Defendant's proposals, and that Plaintiff rejected Defendant's proposal to jointly retain a valuation expert.  Plaintiff has filed a motion to strike these documents, arguing that they are confidential settlement materials.  But even if they could be considered, these documents would not require dismissal.  At the motion to dismiss stage, all reasonable inferences must be drawn in Plaintiff's favor.  The contention that the parties were not far apart in settlement negotiations and Plaintiff could have avoided losses by accepting Defendant's proposals does not conclusively establish that Defendant's proposals were commercially reasonable—Defendants' offer still could have been grossly inflated and Plaintiff may have wanted avoid the cost of litigation.  And Plaintiff's rejection of hiring a joint valuation expert arguably establishes only that it thought that doing so was not a good use of resources.  Further factual development will get to the truth of the parties'

contentions. Even assuming that these documents undercut Plaintiff's claim, they do not at this stage render them implausible.

Defendant's motion to dismiss the breach of contract claim is denied. Plaintiff's motion to strike is denied as moot.

### D. The Indemnity Claim is Dismissed in Part

Plaintiff also alleges that Defendant has breached its obligations by failing to indemnify Plaintiff from the settlement that resulted from the U.S. Customer's termination. The indemnity clause at issue states that Defendant must indemnify Plaintiff "for any and all claims, demands, losses, judgments, fines, penalties, damages, costs, expenses or liabilities . . . arising from any act or omission of [Defendant], its agents, employers, or subcontractors" as well as "any attorneys' fees or other costs that [Plaintiff] incurs in the event that [Plaintiff] has to file a lawsuit to enforce any indemnity or additional insured provision of this Order." Supply Agreement, Ex. B § 11.1. To the extent that this claim relies on Defendant's alleged breach of express warranties, it is dismissed for the reasons that the breach of warranty claim itself is dismissed. But the claim also alleges that the termination and resulting settlement was a result of Defendant's failure to provide a technology license on commercially reasonable terms that would have allowed it to make certain repairs to the GEERs. Compl. ¶ 11. This portion of the claim survives.

While some of Defendant's arguments are directed only to the warranties aspect of the indemnity claim, others are directed to the claim as a whole. Defendant argues that the claim should be dismissed based on documents it has attached to its motion, which it claims show that the U.S. Customer terminated its agreement based on problems with LocoVISION and not due to deficiencies with the GEERs. Specifically, it points to language in the U.S. Customer's notice of termination that asks Plaintiff to remove LocoVISION but implies that the GEERs will be kept.

Again, drawing all inferences in favor of Plaintiff, even if these documents can be considered, they do not, at this stage, conclusively establish this claim's implausibility. For example, even accepting Defendant's interpretation of the letter, it is plausible that if Plaintiff had the technology license to make repairs to enable the GEERs work better with LocoVISION, that the U.S. Customer would have opted to keep both products. Additionally, Plaintiff alleges that it fixed all non-GEER problems less than two weeks after the notice of termination, which was before the termination actually went into effect. *See* Compl. ¶¶ 47-48. And Plaintiff alleges that the U.S. Customer later told Plaintiff that deficiencies with the GEER were the reason that it was following through on the termination, and that it wanted to return the GEERs. *Id.* It is plausible at this stage that Defendant's breach of the contract caused the termination and settlement payment.

Defendant's motion to dismiss this claim is denied.

## IV. CONCLUSION

For the reasons articulated above, Defendant's motion to transfer, dismiss for *forum non conveniens*, or in the alternative stay is denied. Defendant's motion to dismiss for failure to state a claim is granted in part and denied in part. The motion is granted with respect to Plaintiff's express breach of warranty claim and the indemnity claim to the extent that claim relies on a breach of warranty. It is otherwise denied. An initial pre-trial conference will be scheduled by separate order.

Within one week of the date of this Memorandum and Order, the parties should propose redactions, if any, to this document.

This resolves Dkt. Nos. 21, 23, 33.

SO ORDERED.

Dated: June 1, 2020
      New York, New York

_____
ALISON J. NATHAN
United States District Judge