UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GE TRANSPORTATION PARTS, LLC,

        Plaintiff/
        Counterclaim Defendant,

      -v-

CENTRAL RAILWAY
MANUFACTURING, LLC,

        Defendant/
        Counterclaim-Plaintiff.

19-CV-4826 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

      Two manufacturers of train components have filed claims against each other stemming from a 2015 Supply Agreement ("Supply Agreement") to which they were parties.  GE Transportation Parts, LLC ("GET") sued Central Railway Manufacturing, LLC ("Central"), claiming that Central's event recorders were not properly recording video data, leading to customer complaints.  Central claims that its event recorders worked fine and that GET's digital recording products were to blame.  GET asserts claims for breach of contract and indemnification, while Central counterclaims for breach of contract.

      The parties have filed cross-motions for summary judgment:  GET moves for summary judgment on Central's sole remaining counterclaim and on certain of Central's affirmative defenses.  Central asks the Court for a declaratory judgment that it may sell its event recorders in the marketplace under the terms of the Supply Agreement, and also moves for summary judgment on GET's breach of contract and indemnification claims.  For the reasons that follow, GET's motion is granted and Central's motion is denied.

## I.   Background

The following facts are undisputed except where otherwise noted.

GET and Central entered into the Supply Agreement on November 16, 2015.  (Dkt. No. 118 ¶ 1.)  Under the terms of the Supply Agreement, which is governed by New York law, Central agreed to provide GET with "GEERs" (General Electric Event Recorders).  (*Id.* ¶¶ 2-3.) GET contends that GEERs are a type of digital product that, when bundled with GET's digital recording product, "LocoVISION," provides a railroad monitoring system with comprehensive data and video recording capability.  (*Id.* ¶ 5.)  Central disagrees, claiming that LocoVISION proved incapable of providing reliable or stable video recording and was rejected by customers, including by the U.S. Customer.  (Dkt. No. 143 ¶ 5.)  GET purchased GEERs from Central to resell to GET's railroad customers, including two Class I railroad customers located in the United States (*i.e.*, the U.S. Customer and the KC Customer) and one in Canada.  (Dkt. No. 118 ¶ 4.)  On October 6, 2017, Central notified GET that Central would be discontinuing production of the GEERs effective January 6, 2018 ("Notice of Discontinuance").  (*Id.* ¶ 7.)  The Notice of Discontinuance did not have the effect of terminating the Supply Agreement, which is currently scheduled to expire on November 16, 2024.  (*Id.* ¶¶ 8-10.)

On May 23, 2019, GET brought claims for breach of express warranty, breach of contract, and indemnification against Central.  (Dkt. No. 1.)  On July 12, 2019, Central filed motions: (1) to transfer this action to the United States District Court for the Middle District of Florida, dismiss, or stay the action pending an opportunity to litigate certain preliminary matters in Florida, and (2) to dismiss the complaint for failure to state a claim.  (Dkt. Nos. 21, 23.)  On June 1, 2020, then-District Judge Alison J. Nathan (to whom this case was previously assigned): (1) denied Central's motion to transfer, and (2) granted in part Central's motion to dismiss, dismissing GET's claims for breach of warranty and indemnity (to the extent indemnity relied on

a breach of warranty). (Dkt. No. 56.) On June 15, 2020, Central filed its answer and counterclaims, which it later amended after GET filed a motion to dismiss the counterclaims. (Dkt. Nos. 50, 57, 64, 72, 76.) Central included three counterclaims in its amended pleading for product disparagement/injurious falsehood, FDUTPA violations, and breach of contract. In its answer, Central also asserted twelve affirmative defenses, seven of which are the subject of GET's summary judgment motion. On August 19, 2020, GET moved to dismiss Central's amended counterclaims. On March 4, 2021, Judge Nathan dismissed Central's first two counterclaims with prejudice, leaving only Central's breach of contract counterclaim.

## II.    Legal Standard

A party is entitled to summary judgment if it can "show[ ] that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is "material" if "it might affect the outcome of the suit under the governing law." *Hurley v. Tozzer, Ltd.*, No. 15 Civ. 2785, 2018 WL 1087946, at *1 (S.D.N.Y. Feb. 26, 2018) (quoting *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002)). The party moving for summary judgment bears the burden of showing that no genuine dispute of material fact exists, *id.*, and in assessing whether the movant has carried this burden, a court "must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his or her favor." *Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo.*, 458 F. Supp. 2d 160, 166 (S.D.N.Y. 2006).

## III.    Discussion

The court first addresses GET's motion for summary judgment on Central's breach of contract counterclaim and on certain of Central's affirmative defenses, before turning to

Central's request for a declaratory judgment and its cross-motion for summary judgment on GET's breach of contract and indemnification claims.

### A.      GET Motion for Summary Judgment on Central's Breach of Contract Claim

Under New York law, a breach of contract claim requires proof of: (1) an agreement; (2) adequate performance by the plaintiff; (3) breach by the defendant; and (4) damages. *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011). Here, Central has not established the requisite element of damages as a matter of law because under the Uniform Commercial Code, sellers of goods, like Central here, are not entitled to consequential damages. *Sack v. Lawton*, No. 01-cv-285 (SHS), 2003 WL 22682043, at *5 (S.D.N.Y. Aug. 28, 2003) ("New York's commercial code, as set forth in the UCC, does not provide the remedy of consequential damages for an aggrieved seller."); *Hidden Brook Air, Inc. v. Thabet Aviation Int'l Inc.*, 241 F. Supp. 2d 246, 275 (S.D.N.Y. 2002) (same); *Knic Knac Agencies v. Masterpiece Apparel*, No. 94-cv-1073 (LMM), 1999 WL 156379, at *14 (S.D.N.Y. Mar. 22, 1999) (same); *Associated Metals & Minerals Corp. v. Sharon Steel Corp.*, 590 F. Supp. 18, 21 (S.D.N.Y. 1983) (same), *aff'd sub nom. Associated Metals & Min. v. Sharon Steel*, 742 F.2d 1431 (2d Cir. 1983).

Central contends that common law, not the U.C.C., governs and therefore consequential damages are available to it. Central argues that the Court previously analyzed applicable U.C.C. provisions and determined that the U.C.C. did not displace the common law regarding how documents are incorporated into a contract by reference, noting that "'[u]nless displaced by the particular provisions of this act, the principles of law and equity, including the law merchant . . . supplement its provisions.'" (Def.'s Br. at 34-35 (quoting Dkt. No. 56 at 9 (citing N.Y. U.C.C. Law § 1-103(b)).) Central contends that the U.C.C. is similarly silent as to the remedies that apply where the seller pleads forms of breach that do not involve (a) a rejection or revoked

acceptance of goods, (b) a failure to make payment for their sale, or (c) repudiation of the

contract.  (*Id.* at 35.)  According to Central, because its counterclaim does not allege that GET

rejected or revoked its acceptance of any event recorders, failed to pay for them, or repudiated

the Supply Agreement, any limitations imposed by the U.C.C. do not apply to Central's breach

claim.

The Court disagrees.  Under N.Y. U.C.C. § 1-305, "neither consequential or special

damages nor penal damages may be had except as specifically provided in this act or by other

rule of law."  The Court looks to the nature of the parties' contract to determine the applicable

U.C.C. provisions.  Here, it is evident that the Supply Agreement involves mainly the sale of

goods (the event recorders that are the focus of this dispute) and also ancillary services

(complementary software and intellectual property licensing, service, and warranty obligations).

(Supply Agreement at 1, §§ 3(a), 10.)  It is well settled that where a contract is predominantly for

the sale of goods, Article 2 of the U.C.C. applies.  *See, e.g.*, *Long Island Lighting Co. v. Imo*

*Indus. Inc.*, 6 F.3d 876, 888 (2d Cir. 1993) (applying Article 2 because "agreement was one

predominantly for the sale and delivery of goods"); *Fab-Tech, Inc. v. E.I. DuPont De Nemours &*

*Co.*, 311 F. App'x 443, 445 (2d Cir. 2009) (Article 2 applied to mixed goods and services

agreements predominantly for the sale of goods); *KSW Mech. Servs. v. Johnson Controls, Inc.*,

992 F. Supp. 2d 135, 141 (E.D.N.Y. 2014) (same).  Courts in this District have been clear that

Article 2 does not permit recovery of the sort of consequential damages sought by Central here.

*E.g.*, *Nina Indus., Ltd. v. Target Corp.*, No. 04-cv-2540 (JSR), 2005 WL 323745, at *2 (S.D.N.Y.

Feb. 8, 2005) (granting summary judgment for buyer because consequential damages for seller

unavailable under Article 2); *Sack v. Lawton*, No. 01-cv-285 (SHS), 2003 WL 22682043, at *5

(S.D.N.Y. Aug. 28, 2003) (Article 2 "does not provide the remedy of consequential damages for an aggrieved seller").

The complete list of remedies under Article 2 of the U.C.C. is listed at Section 2-703. Among those listed is a remedy for lost profits, Section 2-708, but this provision applies only to "the measure of damages for non-acceptance or repudiation" of goods.  Central cites this provision in its brief, but elsewhere concedes that "[Central's] breach claim does not allege that GE rejected or revoked its acceptance of any [event recorders], failed to pay for them, or repudiated the Supply Agreement."  Accordingly, Section 2-708 does not apply.

In an effort to end-run the limitations on remedies imposed by Section 2-703, Central contends that it does not seek consequential damages, but rather "direct" damages stemming from loss of profits.  (Def.'s Br. at 38-40.)  Under Article 2, however, lost profits and opportunity costs are consequential damages.  *See, e.g.*, *Nina Indus., Ltd.*, 2005 WL 323745, at *2 (lost profits and opportunity cost damages sought by seller were consequential damages unavailable under § 2-703).  The cases cited by Central in support of its position are readily distinguishable because they are either common law cases or they relate to buyer remedies under § 2-715, which is inapplicable because Central is a seller.  *See Biotronik A.G. v. Conor Medsystems Ireland, Ltd.*, 22 N.Y.3d 799, 809 (2014).

Because Central cannot recover the type of damages it seeks as a matter of law, GET is entitled to judgment in its favor on Central's sole remaining counterclaim.[1]

---

[1] GET has also moved to exclude the proffered testimony of Central's expert on damages on Central's counterclaim.  (Dkt. No. 120.)  Because Central's counterclaim fails as a matter of law, the Court need not and does not address that motion, which is denied as moot.

B.     **GET's Motion for Summary Judgment on Certain of Central's Affirmative Defenses**

GET seeks summary judgment on Central's affirmative defenses two through eight, contending that Central has adduced no evidence to support these defenses and that its corporate representative on the topic of affirmative defenses could not provide any factual basis for them. (Pltf.'s Br. at 13-17.)  Central has not responded to this portion of GET's motion, and thus has abandoned those defenses.  *See* Fed. R. Civ. P. 56(e); *Ferdman v. CBS Interactive Inc.*, 342 F. Supp. 3d 515, 543-44 (S.D.N.Y. 2018) (affirmative defenses abandoned where defendant did not respond to summary judgment arguments).  Accordingly, GET is entitled to summary judgment on Central's affirmative defenses two through eight.

C.     **Central's Request for a Declaratory Judgment That It May Sell Its Event Recorders in the Marketplace Under the Terms of the Supply Agreement**

Central requests "a judicial declaration that it is authorized to sell its event recorders free from an alleged restraint on competition that [GET] has asserted before and during this litigation[.]"  (Def.'s Br. at 1, 3-12.)

"[I]t is well established that 'because an action for a declaratory judgment is an ordinary civil action, a party may not make a motion for declaratory relief but rather . . . must bring an action for a declaratory judgment.'" *Bisnews AFE (Thailand) Ltd. v. Aspen Research Grp. Ltd.*, No. 11-cv-3108 (NRB), 2012 WL 3283479, at *2 (S.D.N.Y. Aug. 13, 2012) (quoting *Int'l Bhd. of Teamsters v. E. Conference of Teamsters*, 160 F.R.D. 452, 456 (S.D.N.Y. 1995)).  The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an *appropriate pleading*, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a) (emphasis added).  Rule 57 provides that the Federal Rules "govern the procedure for obtaining a declaratory judgment under 28

U.S.C. § 2201."  A pleading "must meet the pleading requirements of Federal Rule of Civil

Procedure 8." *Bisnews*, 2012 WL 3283479, at *2 (citations omitted).  In a declaratory judgment

action, like any other action, a party may not bypass the notice and pleading requirements by

way of a motion for summary judgment.  *See, e.g.*, *Wallace v. Nat'l R.R. Passenger Corp.*, 5 F.

Supp. 3d 452, 492 (S.D.N.Y. 2014) (Nathan, J.) (declining to rule on declaratory judgment

request when first asserted at summary judgment); *Bisnews*, 2012 WL 3283479, at *3 ("[T]he

straightforward problem with the pending motion is that [plaintiff] seeks partial summary

judgment on a claim that it failed to plead in its counterclaim" and such "relief must be sought

through an action, not a motion, for declaratory judgment").

The Court is aware of no exception to these well-established federal notice and pleading

requirements, and Central cites none.  Central's request for a declaratory judgment is denied.

**D.      Central's Cross-Motion for Summary Judgment on GET's Breach of
          Contract Claim**

Central contends that GET's breach of contract claim fails as a matter of law or that

GET's damages should be limited because: (1) GET was in "continuous," "material" breach of

the Supply Agreement since April 2017, absolving Central of its obligations thereunder to offer

GET a commercially reasonable price for a license following Central's discontinuance of the

GEER (Def.'s Br. at 13-19); (2) GET's damages on this claim should exclude the costs GET

incurred to develop its own event recorder to replace the GEER (after Central refused to offer a

license on commercially reasonable terms) (*id.* at 20-23); and (3) if the Court excludes GET's

"valuation expert," the Court should also dismiss its breach of contract claim for lack of proof

(*id.* at 23-24).

####     1.     Material Breach

Central contends that GET breached the Supply Agreement in three ways, all stemming from an alleged failure to comply with certain disclosure obligations in §§ 2(b)(b)(iii), 2(j), and Exhibit C to the agreement, thereby "fail[ing] to provide all necessary technical information and interfaces required to enable GEER functioning.  (Def.'s Br. at 15.)  First, Central alleges that in April 2017 GET did not provide certain "technical information and interfaces" to Central, which "prevented the U.S. Customer from realizing the GEER's 3-in-1 capability" and resulted in the "customer's termination of its contracts with [GET]."  (*Id.* at 15-17.)  Second, Central claims that from 2017 to 2019, the KC Customer and Central asked GET for certain proprietary information so the customer could use Central's playback software instead of GET's viewer, which GET did not provide.  (*Id.* at 17-18.)  Finally, Central contends that in late 2020, it requested a "licensed interface" from GET for a Canadian mining customer that sought to purchase Central's crash hardened memory module.  (*Id.* at 19.)  Central's interpretation of §§ 2(b)(b)(iii), 2(j), and Exhibit C is not supported by the plain language of those provisions when read in the context of the Supply Agreement as a whole.

As an initial matter, Section 2(a) of the Supply Agreement provides that GET (not Central) is the "sole channel to market" for communications with GET's customers related to "GE Specified Components," which includes the GEER.  (Pltf.'s Reply at 18.)  Central's corporate representative agrees.  (*Id.*)  Section 2(b)(b)(iii) provides that GET "will provide specifications and oversight" "*for certification*," not for any purpose that Central might want the information.  (*Id.* (emphasis added).)  Certification requirements are not part of Central's counterclaim for breach.  Section 2(b)(b)(iii) thus does not appear to provide a basis for a breach, much less a material breach, by GET.  Central likewise finds no refuge in Section 2(j).  That

provision addresses only the topic of GET's "specifications" and/or "requirements," which Central does not assert as a predicate for any of its three alleged breaches against GET.  Further, the plain language of Section 2(j) imposes obligations on Central (to meet specifications and perform procedures), not on GET.  It therefore does not appear to provide the basis for a material breach claim against GET.  Finally, Exhibit C concerns trademark licenses terms, which are not at issue here.

In any event, even apart from these issues with interpretation of the parties' agreement, genuine disputes of fact preclude summary judgment on these points.

The Court therefore concludes that Central has not met its burden of showing, beyond genuine dispute, that GET was in material breach of the Supply Agreement, thus absolving Central of its obligations thereunder to offer GET a commercially reasonable price for a license following Central's discontinuance of the GEER.

### 2.    Damages

The second basis for Central's motion on GET's breach of contract claim is that GET's damages should exclude the costs GET incurred to develop its own event recorder to replace the GEER after Central refused to offer a license on commercially reasonable terms.  (Def.'s Br. at 20-23.)  Central makes two arguments: (1) that there is no basis in the Supply Agreement for GET to seek damages for these costs; and (2) that GET began developing this replacement product before Central discontinued the GEER in October 2017, so there is no causal connection between Central's alleged breach and GET's replacement cost damages.  (*Id.*)  The plain language of the Supply Agreement and the evidence in the record belie Central's arguments.

The Supply Agreement expressly permits GET to seek damages from Central in the form of costs associated with developing its own event recorder:  Section 21.8 provides that "[w]ithout

limiting the generality of the foregoing, the parties agree that, whether as a result of breach of contract, warranty, tort (including negligence or patent infringement) or otherwise, [Central] shall be liable for any special, consequential, incidental, indirect or exemplary damages relating to the goods, including, but not limited to, contractual liability of [GET] to its customers, and liability for property damage or personal injury."  Moreover, as GET points out, GET never modified, updated, or accessed Central's intellectual property, which is the only contractual limitation on GET's ability to recoup replacement costs.  (Pltf.'s Reply at 27.)

As to Central's second argument, there is a genuine factual dispute regarding when GET began developing its replacement product:  Central contends it was before Central discontinued the GEER and GET says it was after, with both parties adducing evidence in support of their respective positions.  (Pltf.'s Reply at 29.)  Because there is a triable issue of fact on this point, summary judgment is inappropriate.

### 3.     Expert Testimony

The third and final basis for Central's motion on GET's breach claim is that to the extent the Court excludes GET's "expert testimony on the valuation of [Central's] software from [GET's] expert," the Court should dismiss GET's breach of contract claim as lacking in proof. (Def.'s Br. at 23-24.)  The Court concludes that it is unnecessary to rule at this juncture on Central's motion to exclude GET's valuation expert because GET's breach of contract claim is not wholly dependent on expert testimony, and is supported by, *inter alia*, testimony from GET's corporate designee on license negotiations.[2]  (Pltf.'s Reply at 29-30.)

---

[2] Accordingly, Central's motion to exclude expert testimony and for a *Daubert* hearing (Dkt. No. 127) is denied as moot for purposes of summary judgment.  The denial of that motion, however, is without prejudice to renewal prior to trial.

### E.        Central's Motion for Summary Judgment on GET's Indemnification Claim

Finally, Central moves for summary judgment on GET's indemnification claim.  Central argues, first, that that claim should be dismissed if GET's breach of contract claim is dismissed because GET's breach of contract claim "is the only claim left to support its indemnification claim" (Def.'s Br. at 24-25); and second, that "undisputed facts show [GET's] losses were not caused by [Central]."  (*Id.* at 25-34.)  Because the Court has already concluded that Central is not entitled to summary judgment on GET's breach claim, the Court addresses only the second argument.

Central identifies four facts it calls "undisputed" and which it argues show that GET's losses were not caused by Central.  However, as GET points out, there is evidence in the record that belies this claim.

First, Central contends that it is undisputed that, by April 2018, GET knew it could implement a network solution on GET equipment that would not require modification to the GEER, and which would obviate the U.S. Customer's 2019 decision to end the GEER and LocoVISION contracts.  (Def.'s Br. at 25-26.)  However, there is record evidence showing genuinely disputed issues of material fact as to whether GET could have implemented a solution on its own equipment to fix the network issue, without any assistance from Central, and thereby avoided termination.  (*See* Pltf.'s Reply at 31-32.)

Second, Central asserts that it is undisputed that as of December 2018, when the U.S. Customer sent a termination letter to GET prompting settlement negotiations that led to the Termination Agreement in February 2019, the U.S. Customer had not "accepted" GET's LocoVISION cure efforts as satisfactory.  (Pltf.'s Br. at 26-30.)  But again, there are several disputed factual issues relating to GET's cure plan with the U.S. Customer, including Central's own complaint, which indicates that GET satisfied the first two LocoVISION corrective actions

by mid-December 2018 (*see* Dkt. No. 1 ¶¶ 44, 48; Ex. DD and EE), which occurred before the February 2019 Termination Agreement with the customer.

Third, Central claims it is undisputed that the GEER had "3-in-1 recording capability." (Def.'s Br. at 30-32.)  However, the evidence cited by Central is limited to the lab setting, and, moreover, the remaining, unsatisfied cure condition in the notice of default related to GEER's 3-in-1 recording capability (the parties dispute the reason why this cure condition was unsatisfied). (Pltf.'s Reply at 33.)

Fourth, Central contends that it is also undisputed that Central proposed three "solutions" to fix the network loop at the U.S. Customer, but needed "specific technical information or approvals" from GET to implement them.  (Def.'s Br. at 32-34.)  However, GET has adduced several facts that challenge Central's assertion, including evidence supporting its contention that Central repeatedly refused to assist GET.  (*See* Pltf.'s Reply at 33-34.)

Because there remain genuine disputes of material fact, Central's motion for summary judgment on GET's indemnification claim is denied.

## IV. Conclusion

For the foregoing reasons, Plaintiff GET's motion for summary judgment is GRANTED and Defendant Central's cross-motion for summary judgment is DENIED.  Both parties' motions to exclude expert testimony are denied as moot.

The Clerk of Court is directed to close the motions at Docket Numbers 115, 120, 127, and 141.  (This case remains open.)

SO ORDERED.

Dated:  September 26, 2022
        New York, New York

_____
J. PAUL OETKEN
United States District Judge